**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Ruari. C., by and through his Parents, | : | |
| Ronan C. and Beth C. | : | |
| of Yardley, Pennsylvania | : | Civil Action |
| Plaintiffs | : | |
| v. | : | No. |
| | : | |
| PENNSBURY SCHOOL DISTRICT | : | |
| 134 Yardley Avenue, | : | |
| Fallsington, Pennsylvania 19054 | : | |
| | : | |
| Defendant | : | |

## COMPLAINT

### I.    Introduction

1.      A public school district is mandated by federal law to offer an Individualized Education Program (IEP) to every student with a disability every school year, with the IEP to be in place and in force at the start of each school year. 20 U.S.C. § 1414(d)(2)(A); 34 C.F.R. § 300.323 (When IEPs must be in effect.) ("At the beginning of each school year, each public agency must have in effect, for each child with a disability within its jurisdiction, an IEP . . . .").

2.      This action is the appeal of a special education due process hearing in which the Hearing Officer defied federal law and held that the Defendant Pennsbury School District (the "School District" or "District") had no obligation to offer Plaintiff Ruari C. an IEP before the start of the 2023-2024 school year.

3.      The Hearing Officer's conclusion of law is erroneous.

4.      Plaintiff Ruari C. is a young man with Attention Deficit Hyperactivity Disorder ("ADHD") whose parents were forced to place him at the Holy Ghost Preparatory School ("HGP") after the District failed for years to provide him with an appropriate education.

5.     The Family previously brought a claim for tuition reimbursement against the School District for tuition paid to HGP for the 2021-2022 (hereinafter, "Due Process Hearing I"). A hearing officer denied the Family's tuition reimbursement claim, and the Family appealed to both this court and the Third Circuit, both of which affirmed. *Ruari C. v. Pennsbury Sch. Dist.*, No. 22-4080, 2023 WL 5339603 (E.D. Pa. Aug. 18, 2023); *Ruari C. v. Pennsbury Sch. Dist.*, 2024 WL 3633700 (3d Cir. 2024).

6.     The IEP at issue in the previous litigation (Due Process Hearing I) expired on May 25, 2022.

7.     Before the start of the 2023-2024 school year, while the litigation of Due Process Hearing I was pending in the Third Circuit, the School District failed to offer Ruari an IEP.

8.     These above facts are not in dispute.

9.     However, the Hearing Officer erroneously held that the School District had no obligation to offer an IEP before the start of the 2023-2024 school year because the Family did not "clearly and objectively manifest" a request for an IEP.

10.     The Hearing Officer created the "clearly and objectively" test; it is not found anywhere in IDEA.

11.     The Hearing Officer misunderstood a public school district's obligations under IDEA.

12.     IDEA places the burden on a school district to offer a Free and Appropriate Public Education (FAPE) to every child with a disability in its jurisdiction; it does not place a burden on a parent or child to request an IEP.

13.     Plaintiff Ruari C., a minor child with disabilities, and his parents Plaintiffs Ronan C. and Beth C. (the "Family"), bring this action against Defendant School District under the

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*; the federal and state implementing-regulations of the foregoing statutes; and Chapters 14 and 15 of the Pennsylvania Code.

14.    After fully considering the entire record, this Court should determine that the District violated IDEA, Section 504, and the ADA, reverse the Hearing Officer's decision, and award appropriate relief to the Family, specifically, tuition reimbursement for Ruari's 2023-2024 school year at HGP, reasonable attorneys' fees and costs, and any other relief this Court deems just.

## II.    Parties

15.    Ruari at all relevant times resided in Yardley, Pennsylvania with his Parents and within the geographical boundaries of the Defendant School District. Ruari is a student with disabilities as defined under IDEA with a disability classification of Other Health Impairment ("OHI") and Speech and Language Impairment ("SLI") and is a Protected Handicapped Student under Section 504 and the ADA.

16.    The District is located at 134 Yardley Avenue, Fallsington, Pennsylvania 19054. The District is the recipient of several sources of federal funds and is an educational agency designated by Pennsylvania law and the Pennsylvania Department of Education for the provision of educational services to individuals residing within its boundaries; such services include those mandated under IDEA as well as Pennsylvania's statutory/regulatory scheme concerning young children with disabilities.

## III.    Jurisdiction and Venue

17.    This Court has original jurisdiction over this appeal pursuant to 28 U.S.C. § 1331

because this case raises federal questions under the IDEA, Section 504, and the ADA.

18.    Plaintiffs have exhausted their administrative remedies where required under IDEA (20 U.S.C. § 1415(i)), having timely pursued a Special Education Due Process hearing.

19.    Plaintiffs' claims and remedies are authorized by 20 U.S.C. § 1415 and 28 U.S.C. §§ 2201 and 2202, providing for declaratory and any further relief deemed necessary and proper.

20.    All of the Defendant's actions have taken place within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391.

## IV.    <u>Standard of Review</u>

21.    This Court is required to undertake a fully independent review of the record and the hearing officer's decision. *Board of Educ. v. Rowley*, 458 U.S. 176, 206-07, 102 S.Ct. 3034 (1982).

22.    In conducting this independent review, district courts: (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate. 20 U.S.C. § 1415(i)(2)(B).

23.    The Third Circuit requires "a district court to apply a nontraditional standard of review when considering an appeal from a state administrative decision under IDEA" called modified de novo review. *Mary T. v. School District of Philadelphia*, 575 F.3d 235, 241 (3d Cir. 2009).

24.    Under modified de novo review, district courts shall accord "due weight" to the factual findings of the administrative agency. *S.H. v. School District of Newark*, 336 F.3d 260, 269 (3d Cir. 2003). "Due weight" means that although the district courts must consider the

administrative fact findings, the courts are free to reject such findings. *Id*. at 269-70.

25.    The modified de novo review under the IDEA does not apply to Section 504 and ADA claims. *Le Pape v. Lower Merion School District*, 103 F.4th 966, 983 (3d Cir. 2024). Thus, a federal district court applies a de novo standard of review for Section 504 and ADA claims, as opposed to the modified de novo standard of review that the Court will apply for the IDEA claims. *Id*.

## VI.    <u>Applicable Law</u>

### A.    IDEA requires that a school district identify all children with disabilities who live in the district and conduct a special education evaluation.

26.    The purpose of the IDEA is to ensure that "all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).

27.    After a child is determined to be eligible, IDEA and its regulations provide for periodic reevaluations, which "may occur not more than once a year unless the parent and public agency agree otherwise; and must occur at least once every three years, unless the parent and the public agency agree that an evaluation is unnecessary." 20 U.S.C. § 1414(a)(2)(B)(i), (ii); *see also* 34 C.F.R. § 300.303(b).

28.    School districts, however, also have the obligation to "ensure that a reevaluation of each child with a disability is conducted" at any time "the public agency determines that the educational or related service needs, including improved academic achievement and functional performance, of the child warrant a reevaluation; or if the child's parent or teacher requests a reevaluation." 20 U.S.C. §1414(a)(2)(A)(i), (ii); 34 C.F.R. 300.303(a).

29.    According to IDEA, school districts must, at a minimum, evaluate students with

disabilities at least every three years, commonly known as a "triennial evaluation." 34 C.F.R. §
300.303(b)(2).

30.     The public agency must ensure that a student's "evaluation is sufficiently
comprehensive to identify all of the child's special education and related service needs, whether
or not commonly linked to the disability category in which the child has been classified." 34 C.F.R.
§ 300.304(c)(6).

31.     Public school districts' ongoing FAPE requirement also includes evaluating and
obtaining the necessary data for  progress monitoring and Independent Educational Program
("IEP") development. *See id*.

**B.      After the school district identifies a student's needs in an evaluation report,
the school district must use the report to create an IEP and offer a student a
Free Appropriate Public Education before the start of every school year.**

32.     "At the beginning of each school year, each [school district] . . . shall have in effect,
for each child with a disability in the agency's jurisdiction, an individualized education program .
. . ." 20 U.S.C. § 1414(d)(2)(A); *Mobley v. Lab'y Charter Sch.*, 2025 WL 2621303, at *11 (E.D.
Pa. Sept. 11, 2025) (quoting 20 U.S.C. § 1414(d)(2)(A)) ("As a condition of receiving federal
funding, each LEA, at the beginning of each school year, is required to develop and implement an
IEP for each child with a disability who resides within the LEA's jurisdiction.").

33.     Indeed, IDEA's regulations explicitly state that "[a]t the beginning of each school
year, each public agency must have in effect, for each child with a disability within its jurisdiction,
an IEP . . . ." 34 C.F.R. § 300.323 ("When IEPs must be in effect").

34.     Because a school district's obligation to offer FAPE derives from the child's
residency in the community, even disabled students in private schools must timely be offered such
an IEP, and enrollment is not required to trigger the mandatory obligation to provide an offer of

FAPE. *Shane T. v. Carbondale Area School District*, 2017 WL 4314555 at *9 (E.D. Pa. Feb. 24, 2020); *see also I.H. v. Cumberland Valley School Dist.*, 842 F. Supp. 2d 762, 772-73 (E.D. Pa. 2012) ("requiring enrollment as a prerequisite to obtaining an IEP . . . would be at odds with the 'remedial nature' of the IDEA").

35.    If that resident child is attending a privately-funded program, the child still has the right to a timely offer of a FAPE via a thorough evaluation and a proposed timely IEP. *Shane T.*, *supra*, 2017 WL 4314555 at *9.

C.    **The burden is on the school district, not the parent, to ensure that a student has an IEP before the start of each school year, and if it is ambiguous as to whether the student will enroll in the school district, then the district must offer that student FAPE through an appropriate IEP.**

36.    "[I]t is not the parent's obligation to clearly request an IEP or FAPE; instead it is the school's obligation to meet its Child Find duties and offer a FAPE unless the parent makes clear his or her intent to keep the student enrolled in the private school." *Id.* at *15; *Moorestown Tp. Bd. Of Educ. V. S.D.*, 811 F. Supp. 2d 1057, 1066 (D.N.J. 2011) (IDEA's Child Find provision requires that "public schools must do more than wait for an eligible disabled student to contact it.").

37.    "[A] child's entitlement to special education should not depend upon the vigilance of the parents (who may not be sufficiently sophisticated to comprehend the problem) nor be abridged because the district's behavior did not rise to the level of slothfulness or bad faith. Rather, it is the responsibility of the child's teachers, therapists, and administrators—and of the multi-disciplinary team that annually evaluates the student's progress—to ascertain the child's educational needs, respond to deficiencies, and place him or her accordingly." *M.C. on behalf of J.C. v. Cent. Reg'l Sch. Dist.*, 81 F.3d 389, 397 (3d Cir. 1996); *see also Alexander G. through Stephen G. v. Downingtown Area Sch. Dist.*, 2021 WL 1614400, at *9 (E.D. Pa. Apr. 26, 2021)

("District had a non-delegable duty to conduct proper evaluations and provide appropriate goals . . . ."); *P.N. v. Greco*, 282 F. Supp. 2d 221, 239 (D.N.J. 2003) (school district was "liable . . . for failure to convene a proper IEP without delay once it became aware . . . [that private school] plan[ed] to terminate the [student's] placement" because school district "had a non-delegable obligation to ensure that the . . . [student's] rights under the IDEA were not infringed").

38.     In sum, as a leading commentator has put it, "the district of residence must offer FAPE via a proposed IEP for the child when the parents have requested or at least *expressed a willingness* to participate in this process . . . . [T]he district of residence must offer FAPE annually if there *appears* to be requisite parental *interest*." Perry Zirkel, "Legal Obligations to Students with Disabilities in Private Schools," Education Law Into Practice, 351 Ed. Law Rep. 688, 689-91 (2018) (emphasis added) (discussing *I.H. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 771 (M.D. Pa. 2012), and a line of cases including *Shane T.* holding that the trigger for evaluation need not be only a parental request, but can be from other sources, and that burden is upon the district, not parent, when ambiguous).

**D.    A school district is required to reimburse a parent for private school tuition where the district failed to offer an appropriate IEP and where the private school placement was appropriate.**

39.     The Supreme Court established that when a school district's IEP is inappropriate, and when the parents obtain and pay for an appropriate private school program along with other equitable considerations, the school district must fund the private program provided by the child's parents. *School Comm. of Burlington v. Dept. of Educ. of Massachusetts*, 471 U.S. 359, 370-71, 105 S.Ct. 1996 (1985); *see also Florence County School Dist. v. Carter*, 510 U.S. 7, 14, 114 S.Ct. 361 (1993); 34 C.F.R. § 300.148(c).

40.     As such, under IDEA, parents who disagree with their child's program and

placement at a school district may unilaterally enroll their child in an appropriate out-of-district

placement and obtain tuition reimbursement where a court determines that the school district has

not offered an appropriate education for the child. *Shore Reg'l High School Bd. of Educ. v. P.S.*,

381 F.3d 194, 198-99 (3d Cir. 2004).

41.     Under the test for tuition reimbursement from *Burlington*, *supra*, a court's first step

is to determine whether the school district offered the student FAPE through an appropriate IEP.

*Burlington*, 471 U.S. at 369-70.

42.     After examining the written IEP, the court must determine whether the private

school was appropriate. *Burlington*, 471 U.S. at 369-70.

43.     The private school does not need to be the least restrictive environment, nor is it

held to the same FAPE standards as the school district. *Florence County*, *supra*, 510 U.S. at 13-

14.

44.     Tuition reimbursement for a family's unilateral decision to place a child in a private

placement is appropriate if "the [school district] has not made free appropriate education available

to the child in a timely manner prior to that enrollment." *Norristown Area School District v. F.C.*,

636 F. App'x. 857 (3d Cir. 2016) (not precedential).

45.   Once a court determines a placement is appropriate, the court may still reduce the

tuition reimbursement if the court finds that an equitable reduction is necessary after examining

(1) whether the parents informed the school district of their intent to remove the student, (2)

whether the parents made their child unavailable for a reevaluation, or (3) whether the parents

otherwise acted unreasonably. 34 C.F.R. § 300.148(d).

**E.     A student may also bring a tuition reimbursement claim under Section 504
and the ADA.**

46.     Under Section 504, recipients of federal funds such as the District are required to

"provide a free appropriate public education [FAPE] to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a).

47.    Similar to IDEA, Section 504 and its regulations require the identification of all children with disabilities and the provision of appropriate educational services. 29 U.S.C. § 794; *see also* 34 C.F.R. § 104.1 *et seq.*

48.    Section 504 requires that "a public elementary or secondary education program shall annually undertake to identify and locate every qualified handicapped person residing in the recipient's jurisdiction who is not receiving a public education and take appropriate steps to notify handicapped persons and their parents or guardians of the recipient's duty under this subpart." 34 C.F.R. § 104.32; *see also Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 253 (3d Cir. 1999).

49.    "When a state fails to provide a disabled child with a free and appropriate education, it violates the IDEA.  However, it also violates [Section 504] because it is denying a disabled child a guaranteed education merely because of the child's disability. It is the denial of an education that is guaranteed to all children that forms the basis of the claim." *Andrew M. v. Delaware Cty. Office of Mental Health and Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007).

50.    A school may violate Section 504 independent of any violations of IDEA. *See Lauren G. v. West Chester Area School Dist.*, 906 F.Supp.2d 375 (E.D. Pa. 2012) (granting tuition reimbursement for school district's failure to provide FAPE under Section 504 during period for which no relief was granted under IDEA).

51.    Tuition reimbursement is an available remedy under Section 504, as well as under IDEA. *Molly L. v. Lower Merion School Dist.*, 194 F.Supp.2d 422, 429 n.7 (E.D. Pa. 2002) ("Tuition reimbursement has been awarded in cases arising under both the Rehabilitation Act and

IDEA.").

52.     The Third Circuit has held that the ADA "extends the nondiscrimination rule of [Section 504] to services provided by any 'public entity' (without regard to whether the entity is a recipient of federal funds)." *Jeremy H. v. Mount Lebanon School Dist.*, 95 F.3d 272, 279 (3d Cir. 1996). That court held that "the remedies, procedures, and rights" applicable to Section 504 claims are the same as those under the ADA. *Id.*; *see also Tereance D. v. School Dist. of Philadelphia*, 548 F. Supp.2d 162, 169-70 (E.D. Pa. 2008) (applying same analysis to claims under ADA as to claims under Section 504).

53.     The IDEA, Section 504, and the ADA all permit the recovery of reasonable attorneys' fees by parents who prevail in an action or proceeding thereunder. 20 U.S.C. § 1415; 42 U.S.C. § 12205; 34 C.F.R. § 300.517; 29 U.S.C. § 794a.

## VI.     Factual History

54.     Plaintiffs incorporate by reference the preceding paragraphs.

55.     Ruari graduated high school at the conclusion of the 2024-2025 school year from Holy Ghost Preparatory School, a private parochial school located in Bensalem, Pennsylvania. He attended all four years of high school at HGP.

### A.     Ruari's Background

56.     Ruari was diagnosed with Attention Deficit Hyperactivity Disorder/Inattentive Type ("ADHD") in a private evaluation conducted during Ruari's fifth grade year (the 2017-2018 school year).

57.     Ruari presented with needs in speech and language skills including speech articulation, as well as needs in attention and focus, self-regulation, executive functioning, avoidance of non-preferred tasks, and social skills.

58.     During the 2015-16 school year, which was Ruari's third grade year, the Parents came to believe that the District was failing to provide a FAPE to Ruari and unilaterally placed him in a private, parochial school.

59.     The parties then entered into a settlement agreement.

60.     Ruari attended St. Ignatius School starting in March 2016, his third grade school year.

61.     Pennsbury funded Ruari's placement at St. Ignatius pursuant to a settlement agreement.

62.     Pennsbury also paid for Ruari C. to have the benefit of a full-time aide, speech therapy, and behavioral therapy at St. Ignatius.

63.     Instead of offering him FAPE in-District, the School District chose to extend the settlement agreement several times.

64.     As a result, Ruari remained at the private school at the District's expense through the 2020-2021 school year, which was Ruari's eighth grade year.

65.     Under the terms of the settlement, Pennsbury was to evaluate Ruari and offer an IEP for the 2021-2022 school year.

### B.     Due Process Hearing I

66.     Pennsbury completed an evaluation on April 27, 2021.

67.     Ruari was found eligible to receive services under the IDEA under a primary disability category of Autism and two secondary disability categories, Other Health Impairment ("OHI") and Speech or Language Impairment.

68.     He was also determined to be eligible for gifted services.

69.     Parents disagreed with the eligibility classification of Autism.

70.     The Parents submitted a privately obtained evaluation by Holly Cohen, who concluded that Ruari should not be labeled as having autism, but rather simply ADHD, and that the District's proposed placement in an Autistic Support classroom was not appropriate.

71.     The District offered an IEP and placement in an Autistic Support classroom before the start of the 2021-2022 school year, and the Parents disagreed with that programming and placement.

72.     The Parents instead placed Ruari in a parochial school (HGP), where he excelled throughout high school.

73.     On February 28, 2022, Parents filed an administrative due process complaint with the Office for Dispute Resolution seeking to compel Pennsbury to fund Ruari's placement at Holy Ghost Prep for the 2021-2022 school year (Due Process Hearing I).

74.     During the litigation of Due Process Hearing I, the School District offered Ruari an IEP on March, 15, 2022, which the Parents rejected.

75.     On July 15, 2022, the hearing officer issued a decision in favor of Pennsbury and denying Parents' request for tuition reimbursement.

76.     The Parents timely appealed the due process decision to federal court

77.     The March 15, 2022 IEP expired on March 15, 2023.

78.     On August 18, 2023, Judge Pappert issued a decision denying the Parents' appeal and granting Pennsbury's Motion for Judgment on the Administrative Record. *Ruari C. v. Pennsbury Sch. Dist.*, No. 22-4080, 2023 WL 5339603 (E.D. Pa. Aug. 18, 2023).

**C.     The District failed to offer an IEP before the start of the 2023-2024 school year or at any point during the 2023-2024 school year.**

79.     Heading into the 2023-2024 school year, in the midst of litigation with School District over the appropriateness of the last program offered to Ruari (Due Process Hearing I), the

School District did not again offer Ruari an IEP before the 2023-2024 school year.

80.     On September 14, 2023, Parents timely appealed Judge Pappert's decision to the Third Circuit Court of Appeals.

81.     The District did not offer an IEP at any point during the 2023-2024 school year.

82.     Following briefing by the parties, on August 2, 2024, the Third Circuit Court affirmed. *Ruari C. v. Pennsbury Sch. Dist*., 2024 WL 3633700 (3d Cir. 2024).

83.     On August 5, the IEP team convened to develop a proposed IEP for the 2024-2025 school year.

84.     On August 12, 2024, the Parents wrote to Pennsbury indicating that they did not believe the District offered an appropriate program and placement and that they intended to place Ruari at HGP for the 2024-2025 school year; they asked that the District fund the tuition.

85.     On August 15, 2024, the District finalized the proposed IEP and issued a NOREP to the Parents.

86.     On October 24, 2024 the District issued its updated Reevaluation Report. The October 2024 Report changed Ruari C.'s primary classification to Other Health Impairment ("OHI"), with a secondary classification of Autism, and a tertiary classification of Gifted with a Disability. Parents continue to disagree with the Autism classification.

87.     Ruari attended HGP for the 2024-2025 school year and graduated at the conclusion of the school year.

88.     On July 28, 2025, the Parents filed a due process complaint seeking tuition reimbursement for the 2023-2024 and 2024-2025 school years.

**D.     Holy Ghost Prep was a proper placement for Ruari**

89.     HGP is a college preparatory school for young men in grades nine through 12,

located in Bensalem, Pennsylvania.

90.    HGP is accredited/licensed by the Pennsylvania Association of Independent Schools and Middle States Association for Secondary School Accreditation for Growth.

91.    HPG has a total enrollment of 420 students and a teacher to student ratio of nine to one, and Ruari's class size ranged from eight to 20 students.

92.    Ruari also participated in HGP's Montgomery Program, which is designed for students who require accommodations and supports.

93.    Ruari also had an Academic Accommodation and Support Plan, which provides for certain accommodations and supports, including the provision of learning support two times per cycle with a learning specialist to address executive functioning skills (to include self-regulation/emotional regulation, initiating and completing tasks, study skills, and social skills) and time management skills.

94.    In addition, Ruari had an opportunity to meet with ELA (English Language Arts) and Math tutors contracted through Catapult Learning as part of his day at HGP; these opportunities occurred weekly, and did not interfere with his learning support time.

95.    In addition to accommodations listed in his Academic Accommodations and Support Plan, Ruari received additional accommodations from his teachers as may be necessary.

96.    Ruari also had access to a guidance counselor at HGP on an as-needed basis and participates in the following extracurricular activities with other students: tennis team and robotics.

97.    Ruari performed very well at HGP as reflected by his progress and grades in his report cards and progress reports.

98.    HGP staff believed Ruari has been making appropriate progress while at HGP, and that his academics, social-emotional, and behavioral needs are being met.

99.     The size of the school and Ruari's classes has contributed to his success at HGP.

**E.     There is no equitable basis to reduce Ruari's deserved tuition award.**

100.     The Parents have always been upfront in all communications and interactions with the District, including expressing their concerns about Ruari's program.

101.     The Parents always provided consent to the District to conduct any evaluation it requested, and attended and fully participated in all meetings, including IEP meetings, and visited and toured the District's proposed placement.

102.     When requested, the Parents signed releases of information and/or provided records in their possession to the District.

103.     As it relates to the 2023-2024 school year, while Parent did not provide 10-day notice prior to the start of the school year expressing their belief that the District's IEP did not offer FAPE, there was no IEP to disagree with, as the District failed to offer one before or during the 2023-2024 school year and their disagreement with the previous IEP was well-established through the litigation.

## VIII.   The Hearing Officer's Errors

104.     The Plaintiff incorporates by reference the preceding paragraphs.

105.     The Hearing Officer issued his Final Order and Decision on December 2, 2025 denying the Family tuition reimbursement.

106.     The Officer erred by excusing the District's failure to offer any IEP for the 2023-2024 school year, much less an IEP in place before the start of the school year.

107.     The Hearing Officer erred by holding that the School District had no duty to offer an IEP to the Family before the start of the 2023-2024 school year: "This issue presented here is unusual in that, with regard to this particular school year [2023-2024], the parties have argued only

a matter of law. There are no disputed material facts with regard to this issue."

108.    The Hearing Officer correctly held that this decision concerned only a matter of law and not a question of fact.

109.    IDEA places the burden of offering FAPE on a public school district, not a parent.

110.    Where it is ambiguous as to whether a family wants an offer of FAPE, IDEA places the burden on the school district to offer FAPE, not on a parent to specifically request an IEP.

111.    The Hearing Officer erred by removing the District's burden of offering a FAPE.

112.    The Hearing Officer erred by shifting the burden of the offer of FAPE to the parents.

113.    The Hearing Officer erred by holding that a parent must "specifically request that the school district offer an IEP for the student."

114.    The Hearing Officer erred by holding that "[i]n interpreting requests for an offer of FAPE for such a student, court's [sic] have narrowly construed what constitutes a request for an IEP or an offer of FAPE."

115.    IDEA is explicit: the duty to offer FAPE is the District's non-delegable duty.

116.    It is not the parent's responsibility to explicitly request an IEP to trigger a school district's obligation to provide FAPE.

117.    The Hearing Officer erred by holding: "Although no magic language is required of the parents, the local education agency's duty to provide an IEP is triggered *only where* the parents *clearly and objectively* manifest a desire for the local education agency to develop programming for the student or request an evaluation of the student." HOD, 14 (emphasis supplied).

118.    No where in the IDEA or its regulations does it state that the duty to provide FAPE is confined to "only where parents *clearly and objectively* manifest a desire" for an IEP.

119.    Rather, where it is ambiguous as to whether a parent has requested an IEP, the

burden is on the school district to offer FAPE; the burden is not on the parent to clearly and objectively request an IEP.

120.    Before and during the 2023-2024 school year, the Parent and the School District were engaged in active litigation over its failure to provide FAPE.

121.    The Parents had continuously requested offers of FAPE, toured classrooms in the School District, attended IEP meetings, made Ruari available for testing, and provided records from HGP in the hopes that the District would offer FAPE.

122.    The Family was not required to use magic words to expressly state their desire for an IEP or an offer of FAPE for the 2023-2024 school year, they placed their ongoing desire for FAPE  squarely at issue by continuing to litigate the District's failure to provide FAPE, and of course the District was fully aware of this.

123.    Assuming, *arguendo*, the District believed that it was ambiguous as to whether the Parents desired an offer of FAPE, then the obligation was on the District to offer an IEP, or to at least directly inquire of the family if they desired an IEP, not on the Parents to "clearly and objectively" request an IEP.

124.    The Hearing Officer's "clearly and objectively" test is antithetical IDEA's remedial nature.

125.    The Hearing Officer erred by holding that "[t]he parents have not proven that the school district had a duty to offer an IEP to the student for the 2023-2024 school year."

126.    Because the District failed to offer FAPE before or during the 2023-2024 school year, the Family unmistakably fulfilled the first prong of the *Burlington*/*Carter* tuition reimbursement analysis, and the Hearing Officer erred in concluding to the contrary.

127.     Furthermore, it is clear that the Parents met their burden of proof regarding the

next two prongs of the tuition reimbursement test as well (the adequacy of the private school and the balancing of equities), and the Hearing Officer erred by deciding otherwise.

128.    As described above, the evidence demonstrated that HGP is an appropriate placement for Ruari.

129.    There is no equitable reason to reduce a tuition reimbursement award.

130.    The Family fully cooperated with the District's requests for evaluations and were full participants in all IEP meetings.

131.    The Family continued to enroll Ruari at HGP while litigating whether the District previously offered him FAPE.

132.    The Family completed all necessary paperwork and signed the necessary releases for the District to evaluate the Student and obtain records from outside providers.

133.    The Family made Ruari available for testing.

134.    Because the Family met the third prong of the tuition reimbursement analysis, there is no equitable basis to reduce or deny tuition reimbursement.

135.    The District failed to offer FAPE to Ruari for the 2023-2024 school year.

136.    The District unquestionably failed in its statutory duties to Ruari and the Hearing Officer erred in ruling otherwise and in failing to award tuition reimbursement as relief.

137.    The District's failure to offer Ruari a non-discriminatory, appropriate educational environment resulted in him being excluded from participation in, denied the benefits of, or subject to discrimination in, his education in violation of not only IDEA, but Section 504 and the ADA as well.

138.    The Hearing Officer therefore erred in not awarding tuition reimbursement under not only IDEA, but Section 504 as well.

**WHEREFORE**, the Plaintiffs respectfully request that this Court:

1.      Assume jurisdiction over this action;

2.      Hear additional evidence pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii);

3.      Reverse the Hearing Officer's Decision and award the Family tuition reimbursement and related costs for 2023-2024 school year at HGP;

4.      Order the Defendant to pay Plaintiffs their reasonable attorneys' fees and related costs;

5.      Declare the Defendant's actions and omissions to be violative of IDEA, Section 504, ADA; and Pennsylvania law; and

6.      Grant such other relief as this Court deems proper.

Respectfully submitted,

/s/*D. Daniel Woody*
D. Daniel Woody, Esquire
Pennsylvania ID No. 309121

/s/ *Michael J. Connolly*
Michael J. Connolly, Esquire
Pennsylvania ID No. 82065

/s/*Dennis C. McAndrews*
Dennis C. McAndrews, Esquire
Pennsylvania ID No. 28012
McANDREWS, MEHALICK, CONNOLLY,
HULSE and RYAN, P.C.
30 Cassatt Avenue
Berwyn, Pennsylvania 19312
Tele: 610-648-9300

Counsel for Plaintiffs
